1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COURTNY R.,[1] | Case No.: 23-cv-105-MMP |
| Plaintiff, | **ORDER RESOLVING JOINT MOTION FOR JUDICIAL REVIEW** |
| v. | |
| MARTIN O'MALLEY, Commissioner of Social Security, [2] | [ECF No. 22] |
| Defendant. | |

Plaintiff Courtny R. ("Plaintiff"), proceeding *in forma pauperis*, appeals the final decision of the Commissioner of Social Security Administration ("Commissioner" or "Defendant") denying his application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. [ECF No. 1, ¶ 6; ECF No. 5.] Plaintiff brings this appeal pursuant to 42 U.S.C. § 405(g). Before the Court is the parties' Joint Motion for Judicial Review. [ECF No. 22.] The parties have consented to the undersigned for all purposes. [ECF No. 24.]

---

[1] In accordance with Civil Local Rule 7.1(e)(6)(b), the Court refers to all non-government parties by using their first name and last initial.

[2] Martin O'Malley, the current Commissioner of Social Security, is automatically substituted as defendant for Kilolo Kijakazi, the former Acting Commissioner of Social Security, pursuant to Federal Rule of Civil Procedure 25(d).

After a thorough review of the parties' submissions, the administrative record, and the applicable law, and for the reasons set forth below, the Court **AFFIRMS** the final decision of the Commissioner of Social Security.

## I.   PROCEDURAL HISTORY

On October 22, 2020, Plaintiff filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act, as well as for supplemental security income under Title XVI, alleging a disability onset date of May 20, 2019 in both applications. [ECF No. 22 at 2]; Administrative Record ("AR") 311–20. Plaintiff alleges impairments of dyslexia, depression and related disorders, and complications from broken left leg, the latter of which is the subject of Plaintiff's appeal for judicial review. *See* AR 129, 150. The claim was denied initially on May 21, 2021, and upon reconsideration on August 24, 2021. [ECF No. 22 at 2]; *see* AR 220–24, 226–31. Plaintiff filed a written request for hearing. AR 237–38.

On February 10, 2022, the Administrative Law Judge ("ALJ") held a telephonic hearing on the matter in which Plaintiff, appearing with counsel, as well as a vocational expert testified. AR 26, 40–58. On March 4, 2022, the ALJ issued a decision denying benefits. [ECF No. 1, ¶ 7]; AR 26–35. Plaintiff filed a request for Appeals Council review, which was denied on November 29, 2022. AR 304–10, 1–7. Accordingly, the ALJ's decision is the final decision of the Commissioner of Social Security.

## II.   SUMMARY OF ALJ'S FINDINGS

### A.   The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled, and the claim is denied. 20 C.F.R. § 404.1520(a)(4)(i) and (b); *see also* 20 C.F.R. § 416.920(a)(4)(i) and (b).

If the claimant is not currently engaged in substantial gainful activity, the second step requires the ALJ to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities, and which has lasted or is expected to last for a continuous period of at least twelve (12) months; if not, the claimant is not disabled and the claim is denied. 20 C.F.R. §§ 404.1520(a)(4)(ii) and (c), 404.1509 (setting forth the twelve (12) month duration requirement); *see also* 20 C.F.R. §§ 416.920(a)(4)(ii) and (c), 416.909. If the claimant has a "severe" impairment or combination of impairments, the third step requires the ALJ to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed, and benefits are awarded. 20 C.F.R. § 404.1520(a)(4)(iii) and (d); *see also* 20 C.F.R. § 416.920(a)(4)(iii) and (d).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the ALJ proceeds to the fourth step of the disability evaluation process. 20 C.F.R. §§ 404.1520(e), 416.920(e). The fourth step requires the ALJ to determine whether the claimant has sufficient residual functional capacity ("RFC") to perform his past work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Therefore, the ALJ must determine the claimant's RFC before moving to step four.

At step four of the sequential process, if the ALJ determines a claimant has sufficient RFC to perform past relevant work, the claimant is not disabled, and the claim is denied. 20 C.F.R. §§ 404.1520(a)(4)(iv) and (f)–(g), 416.920(a)(4)(iv) and (f)–(g).

At step five, the burden then shifts to the ALJ to establish that the claimant is not disabled because there is other work existing in "significant numbers" in the national economy" the claimant can do, taking into account the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1560(c), 416.960(c); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v) and (g)(1), 416.920(a)(4)(v) and (g)(1); *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012). The ALJ usually meets this burden either (1) by the testimony of a vocational expert who assesses the employment potential of a hypothetical individual with

all of the claimant's physical and mental limitations that are supported by the record, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. *Id*. The determination of this issue comprises "the fifth and last step" in the sequential analysis. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### B.   The ALJ's Application of the Five-Step Process

At step one, the ALJ found Plaintiff had "not engaged in substantial gainful activity since May 20, 2019, the alleged onset date." AR 28 (citing 20 C.F.R. §§ 404.1571, 416.971).

At step two, the ALJ found Plaintiff had the following severe impairments: "residuals of left ankle fracture and surgery, obesity, anxiety, and depression." *Id.* (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)).

At step three, the ALJ found Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." AR 29 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). In particular, the ALJ found Plaintiff did not meet listing 1.17 or 1.18. *Id.* The ALJ also evaluated obesity pursuant to the guidelines set forth in Social Security Ruling ("SSR") 19-2p and found Plaintiff's "obesity, while severe, did not medically equal the requirements of a listing" because "it did not rise to the level as to prohibit the claimant's physical or mental ability to do any work activities." *Id.* The ALJ also found Plaintiff's "mental impairments, considered singly and in combination, did not meet or medically equal the criteria of listings 12.04 or 12.06." *Id.*

The ALJ found Plaintiff had the RFC to perform medium work, as defined in 20 C.F.R §§ 404.1567(c) and 416.967(c), except Plaintiff "should never climb ladders, ropes, or scaffolds, could frequently balance, and could occasionally climb ramps and stairs, stoop, kneel, crouch, crawl, and push and pull with the left leg" and Plaintiff "should avoid concentrated exposure to extreme cold, unprotected heights, and moving and dangerous machinery." AR 30. In addition, Plaintiff "was able to understand, remember, and carry

out simple instructions and tasks, and could work at a normal pace without production quotas." *Id.*

At step four, the ALJ found Plaintiff was unable to perform any past relevant work, including as a shipyard laborer. AR 34.

At step five, the ALJ found Plaintiff was classified as a younger individual age (18 to 49) on the alleged disability onset date and found Plaintiff had at least a high school education. *Id.* The ALJ found transferability of job skills was not an issue because Plaintiff's past relevant work was unskilled. *Id.* The ALJ found when considering Plaintiff's "age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could perform." AR 34 (citing 20 C.F.R §§ 404.1569, 404.1569a, 416.969 and 416.969a). The ALJ adopted the vocational expert's testimony that given all of the factors, an individual with Plaintiff's age, education, work experience, and RFC "would be able to perform the requirements of representative occupations such as sweeper/cleaner (DOT #389.683-010) with 92,000 jobs nationally, linen room attendant (DOT #222.387-030) with 65,000 jobs nationally, and dry janitor (DOT #358.687-010) with 17,000 jobs nationally." AR 35.

Accordingly, the ALJ found Plaintiff had "not been under a disability, as defined in the Social Security Act, from May 20, 2019, through the date of" the ALJ's decision this decision. *Id.*

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The Commissioner's decision will be disturbed only if "it is either not supported by substantial evidence or is based upon legal error." *Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022) (quoting *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018)).

The substantial-evidence standard requires a reviewing court to "look to the existing administrative record and ask whether it contains sufficient evidence to support the agency's factual determinations." *Id.* (citing *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154

(2019)) (internal quotation marks omitted). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The standard requires "more than a mere scintilla" of evidence, "but less than a preponderance." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). "Overall, the standard of review is highly deferential." *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023). Thus, "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Woods*, 32 F.4th at 788 (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).

The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). The ALJ is responsible for resolving conflicts in medical testimony as well as any ambiguities in the record. *Id.*; *see also Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010; *see also Collings v. Saul*, 856 F. App'x 729, 730 (9th Cir. 2021).

The Court may also overturn the Commissioner's denial of benefits if the denial is based on legal error. *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 929 (9th Cir. 2014). However, even if the Court finds the ALJ committed legal error, a court may not reverse an ALJ's decision if the error is harmless, "which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Id.* at 932 (internal quotations and citation omitted); *see also Burch*, 400 F.3d at 679 (citation omitted).

## IV.    DISCUSSION

Plaintiff does not challenge the ALJ's discrediting of Plaintiff's subjective statements or the ALJ's evaluation of the medical opinions; instead, Plaintiff solely

challenges the ALJ's opinion on the ground that substantial evidence does not support the RFC determination Plaintiff was able to perform medium exertional work requiring standing throughout the day and lifting twenty-five (25) to fifty (50) pounds. [ECF No. 22 at 4.] Plaintiff's argument is twofold: first, the longitudinal record does not support the ALJ's determination because Plaintiff was not weightbearing, and his use of a cane to ambulate is inconsistent with medium work activity. Second, even if Plaintiff's condition improved by the January 2021 consultative examination, the ALJ erred by not awarding a closed period of disability, as Plaintiff was unable to bear weight for greater than twelve months after his injury, from May 2019 through January 2021. [*See id.* at 8–10.]

Defendant contends generally substantial evidence supports the ALJ's RFC determination. Defendant maintains the ALJ reasonably resolved conflicts in the evidence and the RFC finding accounted for all limitations that were supported by the evidence. [*Id.* at 11.] In particular, Defendant contends the ALJ "reasonably found Plaintiff's allegations unreliable" in light of the objective medical evidence and "reasonably declined to incorporate in the residual functional capacity finding any limitations associated with Plaintiff's alleged inability to walk." [*Id.* at 13.]

## A.    Applicable Law

The "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) (quoting Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996)). It reflects the *most* a claimant can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* SSR 96-8p, 1996 WL 374184, at *1 ("RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*.") (emphasis in original). An RFC assessment must include an individual's functional limitations or restrictions as a result of all of his impairments – even those that are not severe – and must assess his "work-related abilities

on a function-by-function basis." *Id.*; *see* 20 C.F.R. §§ 404.1545(a)(1)–(2) and (e), 416.945(a)(1)–(2) and (e); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("[A]n RFC that fails to take into account a claimant's limitations is defective.").

An RFC determination must be based on "all the relevant evidence in [the] case record." 20 C.F.R. §§ 404.1545(a)(1)–(3), 416.945(a)(1)–(3). "The ALJ must consider both the medical evidence and 'descriptions and observations of [the claimant's] limitations from [the claimant's] impairment(s), including limitations that result from [the claimant's] symptoms, such as pain, provided by' the claimant, family, friends, and other people." *Laborin*, 867 F.3d at 1153 (brackets in original) (citing § 416.945(a)(3)). "The RFC assessment must '[c]ontain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate." *Id.* (citing SSR 96–8p) (emphasis omitted). However, in assessing the RFC, the ALJ need not accept the plaintiff's "statements as to the severity and limiting effects of his or her symptoms as true." *Id.* at 1154 n.4. Rather, the ALJ must evaluate the plaintiff's "symptom testimony so that the ALJ can take that testimony—insofar as it is credible—into account as part of the RFC assessment." *Id.* (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)).

A court must uphold an ALJ's RFC assessment when "the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). An ALJ errs when he provides an incomplete RFC that ignores or discounts "significant and probative evidence in the record favorable to [the plaintiff's] position." *Hill*, 698 F.3d at 1161.

### B.     The ALJ's RFC Determination

In determining the RFC, the ALJ stated he "considered all symptoms and the extent to which these symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence" and "also considered the medical opinion(s) and prior administrative medical finding(s)." AR 30 (citing 20 C.F.R. §§ 404.1529, 416.929, SSR 16-3p, 404.1520c, and 416.920c).

First, the ALJ evaluated Plaintiff's subjective statements. AR 31. The ALJ recognized Plaintiff "alleged disability mainly due to ankle issues and mental health impairments"[3] and acknowledged Plaintiff "testified that he fractured his left ankle in 2019, followed by surgery with plates and screws" and "alleged that he still walked with a cane and that his doctors still recommended it." AR 31; *see also* AR 49.

In discrediting Plaintiff's subjective statements, the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms" but Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 31. The ALJ reasoned Plaintiff's "statements about intensity, persistence, and limiting effects" of his symptoms "were inconsistent because the medical evidence of record did not support a finding that these issues would preclude [Plaintiff] from working." AR 31. The ALJ then discussed Plaintiff's medical and physical therapy records regarding his ankle injury from March 2019 through December 2021. AR 31–32.

The ALJ also found the "objective evidence of record did not fully support [Plaintiff's] subjective allegations of disability." AR 32. The ALJ reasoned in relevant part:

> [Plaintiff] testified that he washed dishes in a chair, did his laundry with help, prepared small meals like sandwiches, and went to the grocery store with his mom, but had issues carrying the groceries. . . . At his January 2021 orthopedic consultative examination, it was noted that [Plaintiff] had poor effort during the examination, but he still had generally normal ankle findings with grossly normal range of motion, but some tenderness to palpation. [AR 644–47]. He continued receiving treatment and had some ongoing complaints of pain and numbness in his ankle, but no debilitating complaints. [AR 695–742.]

---

[3] Plaintiff stipulates "the ALJ fairly and accurately summarized the medical and non-medical evidence of record" except as addressed in the disputed issue. [ECF No. 22 at 4.] The only disputed issue raised in this appeal concerns the ALJ's treatment of Plaintiff's ankle injury; accordingly, the Court focuses its summary of the ALJ's analysis on the ankle injury.

23-cv-105-MMP

AR 32. The ALJ concluded "[o]verall, the medical evidence of record showed that [Plaintiff's] impairments would be accounted for with the residual functional capacity noted above." AR 33.

The ALJ next considered the medical opinions and prior administrative medical findings. With respect to Plaintiff's ankle, the ALJ found persuasive the opinions of state agency's medical consultant, Dr. Spetzler, and orthopedic consultative examiner, Dr. Liu.[4] First, the ALJ explained Dr. Spetzler opined Plaintiff "could perform a range of medium work with frequent postural limitations and supported it with his review of the record," which was "generally consistent with medical evidence of record including treatment records at Exhibits 4F and 10F showing the claimant getting treated for his left ankle fracture with surgery and subsequent therapy with improvement, but some ongoing complaints of numbness and pain that made additional limitations more appropriate." AR 33 (citing AR 172–94).

The ALJ also found persuasive Dr. Liu's opinion that Plaintiff's ankle injury impairment "was essentially very slight" which he supported "with the examination findings including grossly normal ankle range of motion and ability to squat and ambulate." AR 33. The ALJ explained Dr. Liu's opinion "was consistent with treatment records at Exhibit 4F showing the claimant with ongoing improvement to his ankle postoperative with treatment and therapy." *Id.* (citing AR 641–49).

The ALJ also considered the third-party statement from Plaintiff's mother but found the medical evidence "more persuasive in arriving at a decision in this matter" because Plaintiff's mother did not have any medical expertise and was not a disinterested witness. AR 33–34.

---

[4] In his briefing, Plaintiff represents the ALJ rejected Dr. Liu's opinion. [*See* ECF No. 22 at 9 ("The ALJ did not accept Dr. Lui's [sic] consultative opinion"); *id*. at 17 ("The ALJ rejected Dr. Lui [sic] because his opinion is both internally inconsistent and inconsistent with the record . . . The ALJ properly rejected Dr. Lui [sic] . . .").] These statements are inaccurate, as the ALJ found Dr. Liu's opinion persuasive. AR 33.

The ALJ concluded Plaintiff's RFC "was supported by the evidence of record, showing no verifiable condition that would preclude [Plaintiff] from performing the requirements of work as set forth above," and "[t]he medical evidence of record did not support [Plaintiff's] the claimant's subjective allegations" and "did not show any combination of impairments that would result in debilitating limitations and which would preclude [Plaintiff] from performing all forms of work activities." AR 34

## C. Treatment Records

Because the parties' arguments focus on Plaintiff's treatment for his left ankle injury, the Court discusses them in relevant part below.

On March 20, 2019, Plaintiff presented to Alvarado Hospital Medical Center with a left ankle fracture after falling of his skateboard. AR 456–58. Plaintiff was unable to walk, had swelling and tenderness of the distal fibula, and decreased range of motion of the ankle. AR 458. X-ray confirmed Plaintiff had a nondisplaced distal fibula fracture with "widening at the Orties joint medially." *Id.* Plaintiff was placed in a posterior splint with a stirrup, provided crutches, and instructed to remain non-weightbearing. *Id.* Plaintiff was provided a limited return to work/school beginning March 27, 2019, with the restriction of "[n]o weightbearing on the L ankle." AR 470. Plaintiff reported taking ibuprofen 800 mg or "Norco 5/325" during the day but was able to sleep without waking from pain. AR 636.

Plaintiff underwent surgery of his left distal fibula fracture on May 17, 2019. AR 551–59. Following the procedure, Plaintiff was instructed to remain non-weightbearing of the left ankle for ten weeks, use a short-leg splint, and return to the clinic in two weeks for "placement of CAM boot, begin range of motion, but strict nonweightbearing." AR 557.

On June 6, 2019, Plaintiff attended a post operative appointment, where Plaintiff reported one episode of accidentally bearing weight on his operative ankle. AR 550. Plaintiff further reported a pain score of five out of ten, describing the pain as "intermittent, dull, worse with activity, and less with rest." Plaintiff also reported numbness/tingling of his left lower extremity. *Id.* Upon physical examination, Plaintiff's gait was observed to be "NWB [non-weightbearing] using knee scooter" and "[o]therwise doing well post op." *Id.*

X-rays confirmed "maintained alignment without evidence of implant loosening or failure." *Id*. Plaintiff was provided a CAM boot as well as exercises to improve ankle range of motion, and he was instructed to remain non-weightbearing of the left ankle for ten weeks, with a follow up in four weeks. *Id.*

The treatment records from Plaintiff's subsequent post op examination on July 11, 2019 noted Plaintiff reported some numbness in his foot and overall compliance with non-weightbearing, though he did try to put weight on it but complained of too much pain. AR 549. The physical examination found Plaintiff's gait was non-weightbearing of the lower left extremity in CAM boot. *Id.* Plaintiff was instructed to continue non-weightbearing and maintaining the CAM boot for two additional weeks, and then Plaintiff could "start to gradually increase to WBAT [weight bearing as tolerated] at that time" and "wean off" the CAM boot. *Id.*

The treatment records from Plaintiff's next follow-up exam on August 22, 2019 indicated Plaintiff's gait was "using crutches" and noted "[a]t last visit, patient was told to progress to WBAT, however, patient states has remained NWB. He continues to use crutches and his boot." AR 548. Plaintiff also reported his pain score was a zero out of ten with "some" numbness at the top of his foot. *Id*. X-rays taken that day demonstrated "interval healing and maintained alignment without evidence of implant loosening or failure, congruent ankle mortise." *Id.* Plaintiff's doctor again instructed him to weight bear as tolerated and to transition out of the boot and off crutches. *Id.* Plaintiff was also referred to physical therapy and cleared for low impact exercise such as swimming and stationary bike. *Id.*

On October 3, 2019, Plaintiff presented for his twenty-week post op examination. AR 545. Plaintiff's gait was observed as using crutches, against the advice of his doctors. AR 546. The treatment records indicated:

> At last visit, patient was again told to progress to WBAT after being told at his last visit to progress. He again has not ambulated on it much. . . . He continues to use crutches but has [to] transition to using regular shoes. He only has pain with certain activities and is only mild at this point.

AR 545. The treatment records separately noted Plaintiff's doctor "discussed again the importance of WBAT and regaining function of his leg" and that "[h]e needs to progress to increasing activity with his PT as his fracture is healed at this time." AR 546.

Treatment records from December 19, 2019 noted Plaintiff's gait was using crutches, though he was "weight bearing with a cane, and advancing his activity" and that he had "no pain and feels that he is improving." AR 544. X-rays confirmed "a well healed fracture, and stable fixation." AR 545. Plaintiff was instructed to continue physical therapy and discontinue cane when able. *Id.*

On March 5, 2020, Plaintiff had another follow up examination of his ankle. AR 541. The treatment records noted his gait was "antalgic, using cane" and Plaintiff walked with a limp. *Id.* Plaintiff reported he still had to ambulate using a cane and a pain score of three out of ten. *Id.* The treatment notations indicated X-rays revealed "no obvious malalignment" and an MRI was ordered because the provider could not "appreciate any cause for lack of improvement in rehab." AR 542. Plaintiff was instructed to weight bear and advance activity as tolerable, and physical therapy was re-ordered. The treatment notes further indicated "No work note given – no further disability unless further surgery indicated." *Id.*

Treatment records from May 2020 indicated Plaintiff's MRI "seems to be largely normal." AR 627. Treatment notations from Plaintiff's orthopedic surgeon, Dr. Girard, indicated Plaintiff was "progressing much slower than expected" even though his "exam shows no deformity, minimal edema, improved rom [range of motion], appears function[al], dysfunctional gait with a cane." AR 472. In addition, Dr. Girard noted the MRI was negative for residual displacement, ligament injury, or "OLT" that would explain Plaintiff's symptoms. *Id.* The physical examination showed Plaintiff's gait was antalgic, and Plaintiff reported "mild" lateral ankle pain rated a three out of ten, which he took Motrin PRN for pain relief. The treatment notations indicated Plaintiff "in general continu[ed] to progress slowly, with mild lateral mid/distal leg/ ankle pain and continued use of a cane for ambulation" and the MRI showed "no evidence of significant pathology

to explain [the] ongoing pain, and on exam, pain does not seem to be directly attributable to hardware." AR 473. Plaintiff was also instructed to continue to weight bear and perform activities as tolerated. AR 473–74.

Plaintiff began physical therapy in June 2020. Records indicate Plaintiff reported still using a cane and taking ibuprofen once a night. AR 623, 620, 533. Physical therapy records from July 2020 assessed Plaintiff as having "significant weakness noted throughout L LE." AR 528. Physical therapy records from August 2020 noted Plaintiff was "making slow progress with improved gait and WB tolerance and L LE strength" with less pain overall and improved range of motion. AR 520. Physical therapy records from September 2020 noted Plaintiff walked with a single point cane which decreased weightbearing and stance time on the left side, demonstrated "global lower extremity strength deficits," and continued to exhibit difficulty with walking and navigating stairs, though he also reported "overall feeling stronger" and "walking also getting easier." AR 517, 510, 509, 506. He also demonstrated improved speed during ambulation and a decreased report of pain. AR 506.

As of October 2020, physical therapy records demonstrated, Plaintiff was able to walk across the street to the grocery store to go shopping and reported feeling stronger with "very minimal" pain, AR 501, and as of November 2020, Plaintiff was "able to perform step ups on 6" step with upper extremity support." AR 488. Physical therapy records from December 2020 indicated Plaintiff was "not performing HEP as instructed, has not progressed beyond bedside exercises, still using SPC. By this point should have returned back to work. Not putting forth good effort." AR 115–16.

On January 24, 2021, Dr. Liu performed an orthopedic consultative examination. AR 642–49. The physical examination revealed Plaintiff ambulated slowly but was able to get up from a sitting position, walk on his toes and heels, and perform a tandem walk, and had no difficulty squatting or getting up from bed. AR 645. There was no tenderness or effusion, and the ankles were stable. AR 647. Dr. Liu observed tenderness with palpation, and range of motion of the ankles was grossly normal, though the left ankle range of motion

was "very slightly decreased compared to the right." AR 647. X-rays confirmed a previous fracture of the distal fibula with a fixation plate present, though no fracture line was seen and the ankle was "normal." AR 642. Dr. Liu found, despite Plaintiff's subjective complaints of chronic pain, "[o]bjectively, he only has a very slightly decreased range of motion of the left ankle compared to the right" and "[g]ait is slow, but poor effort and give-way pattern noted throughout [the] examination." AR 648–49. Dr. Liu concluded that Plaintiff's impairment was "essentially very slight in nature" and there were "no function restrictions." AR 649.

Treatment records from the August 2021 physical examination revealed Plaintiff had a normal gait, appropriate tone and muscle bulk, "[s]trength 5/5 upper and lower extremities" and "[d]eep tendon reflexes 2+." AR 677. Plaintiff resumed physical therapy in September 2021 with Family Health Centers of San Diego, in which he reported difficulty with prolonged walking and standing, pain the back of his ankle, and continued use of a cane for ambulation. *See* AR 730, 726, 716, 70–71, 65–66.

**D.     Analysis**

1.     Substantial Evidence Supports the ALJ's RFC Determination

The Court finds substantial evidence in the longitudinal record supports the ALJ's RFC determination. First, the ALJ found persuasive the opinions of Drs. Liu and Spetzler, AR 33, which Plaintiff does not challenge. [*See* ECF No. 22 at 4.] The ALJ found persuasive Dr. Liu's conclusion that Plaintiff's "impairment was essentially very slight" which he supported "with the examination findings including grossly normal ankle range of motion and ability to squat and ambulate." AR 33. The ALJ also found Dr. Liu's opinion consistent with the treatment records showing Plaintiff "with ongoing improvement to his ankle postoperative with treatment and therapy." *Id.* The ALJ separately found persuasive Dr. Spetzler opinion that Plaintiff "could perform a range of medium work with frequent postural limitations." AR 33. Specifically, Dr. Spetzler opined in relevant part Plaintiff could lift or carry fifty pounds occasionally and twenty-five pounds frequently; stand, walk, or sit for about six hours in an eight-hour workday; and push or pull was limited to

frequent in lower left extremities. AR 184. In connection with his opinion, Dr. Spetzler reasoned Plaintiff "had a relatively minor injury treated routinely and a medium RFC is appropriate giving the claimant credence for pain complaints." AR 185–86. The ALJ found Dr. Spetzler's opinion was consistent with the medical evidence of record showing Plaintiff "getting treated for his left ankle fracture with surgery and subsequent therapy with improvement, but some ongoing complaints of numbness and pain that made additional limitations more appropriate." AR 33 (citing AR 172–94). The ALJ evaluated the persuasiveness of these medical opinions and then, upon finding them persuasive, took them into account as part of the RFC assessment. *See* 20 C.F.R. §§ 404.1545(a)(1)–(3), 416.945(a)(1)–(3).

The medical treatment records also support the ALJ's RFC determination. The treatment records indicate Plaintiff was non-weightbearing on his left ankle in accordance with his doctor's medical advice for ten weeks post-surgery, through July 2019. At that point and in numerous subsequent appointments, Plaintiff was specifically instructed to weight bear as tolerated on the left ankle and to transition out of the boot and off crutches. AR 548. As of October 2019, X-rays confirmed Plaintiff's ankle was healed, and Plaintiff was again instructed to weight bear as tolerated and educated on the importance of regaining function in his leg. AR 546. As of December 19, 2019, Plaintiff was able to weight bear with a cane, though he still used crutches, and the treatment records reflect he had no pain and was improving. AR 544. He was then instructed to discontinue using the cane. AR 545. Despite this instruction, Plaintiff continued to use a cane to ambulate, though he reported minimal-to-no pain. X-rays taken in March 2020 confirmed no malalignment of the hardware in Plaintiff's ankle, such that his treating orthopedic doctors ordered an additional MRI because they could not identify any medical cause for Plaintiff's lack of improvement. *See* AR 542. The MRI was "largely normal" and ruled out various potential causes to explain Plaintiff's subjective symptoms. AR 627, 472. Further, in May 2020, Plaintiff's physical examination showed no deformity, minimal edema, improved range of motion, and that Plaintiff appeared functional, though he had a "dysfunctional gait with a

23-cv-105-MMP

cane." AR 472. Plaintiff also reported a three out of ten-pain level at the time, which he treated with Motrin. AR 473. November 2020 physical therapy records show Plaintiff was progressing, though slowly due to his own subjective fear of putting body weight onto his left leg. AR 489. Physical therapy records from December 2020 indicated Plaintiff was not performing his home exercise program (HEP) as instructed, was still using a cane, with the notation "[b]y this point should have returned back to work. Not putting forth good effort." AR 115–16.

In sum, the two medical opinions the ALJ found persuasive, which Plaintiff does not challenge, as well as the medical treatment records provide substantial evidence for the ALJ's RFC determination of medium work. *See Bayliss*, 427 F.3d at 1217 ("In making his RFC determination, the ALJ took into account those limitations for which there was record support that did not depend on [the plaintiff's] subjective complaints. Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary.") (citing SSR 96–8p).

The Court is not persuaded by Plaintiff's argument the ALJ ignored "significant and probative evidence" and simply chose an RFC without considering Plaintiff's continued use of a cane. [*See* ECF No. 22 at 8–10.] As an initial matter, in making the RFC determination, the ALJ expressly considered Plaintiff's use of a cane. AR 31; *see* AR 32 (citing AR 548–49, 544, 541) ("In August 2019, he reported zero out of ten pain, and he continued using crutches and his boot."); ("By December 2019, he was weightbearing with a cane, advancing his daily activity, had no pain, and felt that he was improving."); and ("March 2020 progress notes showed that he had been attending physical therapy, was still using a cane to ambulate, and walked with a limp."). Plaintiff's use of a cane alone, however, does not establish his alleged severity or limiting effects for purposes of the RFC assessment. The Ninth Circuit has made clear the ALJ need not accept the plaintiff's "statements as to the severity and limiting effects of his or her symptoms as true." *Laborin*, 867 F.3d at 1154 n.4. Rather, the ALJ must evaluate the plaintiff's "symptom testimony so that the ALJ can take that testimony—insofar as it is credible—into account as part of the

RFC assessment." *Id.*; *see Higgins v. Kijakazi*, No. 22-35966, 2023 WL 7211390, at *2 (9th Cir. Nov. 2, 2023) ("Crucially, however, the ALJ need only consider 'symptoms . . . [to] the extent to which [these] symptoms *can reasonably be accepted as consistent with the objective medical evidence.*' [ ] *An ALJ need not adopt allegations that the record does not support*.") (citing *Osenbrock v. Apfel*, 240 F.3d 1157, 1164–65 (9th Cir. 2001) (quoting 20 C.F.R. § 404.1529(a)) (emphasis added) (some alterations in original). In discrediting Plaintiff's subjective statements—once again, a finding Plaintiff does not dispute—the ALJ specifically identified Plaintiff's continued use of a cane. *See* AR 31 ("He alleged that he still walked with a cane and that his doctors still recommended it."). The ALJ discredited Plaintiff's statements regarding intensity, persistence, and limiting effects on the grounds his symptoms were inconsistent because the medical evidence did not support a finding Plaintiff's symptoms were work preclusive and the objective evidence did not support Plaintiff's subjective allegations of disability. AR 31–32. Plaintiff does not challenge the ALJ's conclusions. Thus, because the ALJ discredited Plaintiff's subjective statements, the ALJ was not required to incorporate Plaintiff's statements regarding intensity, persistence, and limiting effects in the RFC assessment.

Finally, to the extent Plaintiff argues the ALJ should have incorporated his use of a cane into the RFC determination, his argument is not persuasive. In assessing alleged use of a cane for purposes of the RFC, the Ninth Circuit and other district courts have applied the language of Social Security Ruling 96-6p:

> To find that a hand-held assistive device is medically required, *there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed* (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).

SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996) (emphasis added); *see Sou v. Saul*, 799 F. App'x 563, 564 (9th Cir. 2020); *Pokriots v. Astrue*, No. 11-CV-00117, 2012 WL

2395184, at *6 (D. Idaho June 25, 2012)[5]; *see also*; *Beatrice D. A. v. Kijakazi*, No. CV 22-01207, 2023 WL 3007921, at *3 (C.D. Cal. Apr. 19, 2023) ("The use of a hand-held assistive device such as a cane is a functional limitation only if it is medically required."); *Pete A. v. Kijakazi*, No. 20-CV-1566-LL, 2021 WL 5396113, at *3 (S.D. Cal. Nov. 18, 2021) (citing *Luis G. v. Saul*, No. ED CV 19-00317, 2020 WL 1433589, at *3 (C.D. Cal. Mar. 24, 2020) ("[T]he use of an assistive device is probative of a claimant's functional limitations only where it is medically required.") and *Dean N. v. Saul*, Case No. CV 18-09840, 2020 WL 430962, at *1 (C.D. Cal. Jan. 28, 2020)); *Mays v. Astrue,* 2012 WL 1865496 at *7 (N.D. Ohio, May 22, 2012). Plaintiff does not satisfy the standard set forth in SSR 96-9p, as no doctor prescribed or recommended the continued use of a cane. Rather, Plaintiff's treating orthopedic physicians repeatedly instructed Plaintiff to weight bear and to transition off crutches and his boot as of July 2019 and to discontinue the use of his cane when able in December 2019. The treatment notations also do not establish a cane was medically necessary, particularly as the multiple X-rays and MRI confirmed Plaintiff's ankle was well healed. Though Plaintiff does not address or argue his continued use of a cane was medically necessary, he cites various physical therapy records that document his use of a cane. These records, however, merely observe Plaintiff continued to use a cane for ambulation—they do not recommend continued use. Moreover, the Ninth Circuit has

---

[5] The district court explained:

> The Social Security Administration's Program Operations Manual System (POMS) is described as "a primary source of information used by Social Security employees to process claims for Social Security benefits." See https:// secure.ssa.gov/apps10/poms.nsf/Home?readform. The section on disability insurance includes guidance on medical-vocational evaluation and, in particular, determining any physical limitations and their effects of ranges of work. POMS DI 25020.005, entitled "Medically–Necessary Hand–Held Assistive Device," provides a link to DI 25015.020B.6 which tracks the language of Social Security Ruling ("SSR") 96–9p. See https:// secure.ssa.gov/apps10/poms.nsf/lnx/0425015020# b6.

recognized a note from a physical therapist "is not a *medical* opinion, and thus does not constitute 'medical documentation' under SSR 96-9p." *Sou*, 799 F. App'x at 564 (emphasis in original). Thus, the physical therapy notes "could not have established that [Plaintiff's] use of a cane was medically necessary." *See id*. at 564 n.1; *Amber C. v. Saul*, No. 19-CV-03208, 2020 WL 2061771, at *3 (C.D. Cal. Apr. 29, 2020) ("The physical therapy notes, including the note regarding Plaintiff's training to use the walker, did not describe such circumstances and, in any event, such notes were not the type of medical documentation contemplated by SSR 96-9P.").

The Court finds the ALJ did not err in declining to incorporate Plaintiff's use of a cane into the RFC. *See Pete A*., 2021 WL 5396113, at *5–8 (finding substantial evidence supported the ALJ's finding the plaintiff had the RFC to perform medium work despite the claimant's alleged use of cane, where he failed to establish the cane was medically necessary); *Mays*, 2012 WL 1865496, at *7 (finding no error in the ALJ's refusal to consider Plaintiff's use of a cane for ambulation in formulation of his RFC of medium work where cane was not prescribed or medically recommended for ambulation).

## 2.  Substantial Evidence Supports the ALJ's Determination of Non-Disability Prior to January 2021

Plaintiff next argues while his condition improved as the ALJ recognized, there was still a period of disability when Plaintiff was not even weight bearing until January 2021; as a result, the ALJ erred by not awarding a closed period of disability. [ECF No. 22 at 5, 10.] Under the social security regulations, a person is disabled if he is unable to engage in any substantial gainful employment "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). District courts have recognized "an ALJ must consider a closed period of disability if evidence supports a finding that a person is disabled for a period of at least twelve months." *Alicia M. v. Comm'r of Soc. Sec*., No. 21-cv-00433, 2023 WL 2744135, at *3 (D. Idaho Mar. 31, 2023) (citing *Reynoso v. Astrue*, No. cv 10-04604, 2011

WL 2554210 at *3 (C.D. Cal. 2011); *Dianna K. v. Saul*, No. 5:18-CV-02216-JDE, 2019 WL 13037009, at *2 (C.D. Cal. Aug. 19, 2019).

The ALJ found Plaintiff had not been under a disability from May 20, 2019 through the date of the ALJ's decision. AR 35. Because the May 2019 through January 2021 period is contained within the period of time explicitly identified by the ALJ, the ALJ implicitly denied Plaintiff's disability during the alleged closed period. *See Saul v. Colvin*, No. CV-14-01305-PHX-JZB, 2015 WL 5693541, at *4 (D. Ariz. Sept. 29, 2015); *Alicia M.*, 2023 WL 2744135, at *4–5 ("[T]he ALJ's conclusion that Plaintiff was not disabled during the relevant time period means that Plaintiff was not entitled to a closed period of disability at any time during that same period.").

The Court finds substantial evidence supports the ALJ's non-disability determination during this period. As of May 2020—twelve months after the alleged disability onset date—the objective medical evidence including multiple X-rays and MRI established Plaintiff's left ankle was well healed. Further, Plaintiff was increasing his activity and walking tolerance in particular, and Plaintiff exhibited improved range of motion in his left ankle. While Plaintiff contends his "injury was not routine as by June 2020, more than a year later, he was only putting 15 to 25% weight on his left leg," ECF No. 22 at 17, the physical therapy record in question is from Plaintiff's telehealth appointment and specifically indicates the provider was unable to evaluate Plaintiff over video; thus, this reflects Plaintiff's subjective statements, which the ALJ discredited. *See* AR 536. By July 2020, Plaintiff reported only weight bearing up to fifty percent, though the treatment records show improved range of motion and weight bearing tolerance. AR 530–31. By August 2020, Plaintiff was making slow progress with improved gait, weightbearing tolerance, and left lower extremity strength, and he had improved range of motion and overall less pain. AR 520. By September 2020, Plaintiff reported feeling stronger, experiencing less stiffness, and moving faster up stairs and walking easier, though he demonstrated decreased strength and balance deficits in the lower left extremity and reported lateral ankle pain if walking up stairs or too far. AR 517, 615, 509. He also

reported no increase in pain during or after the physical therapy sessions. AR 515. In October 2020, Plaintiff was able to walk across the street to the grocery store and reported "very minimal" pain, though he was guarding with left ankle activities and required upper extremity support for heel raises and partial gait tasks. AR 501, 500, 497. In November 2020, Plaintiff was able to perform step ups on six-inch steps but required increased time due to fatigue; however, he still had difficulty performing single limb balance due to his subjective fear of putting all his body weight through left leg. AR 489. However, physical therapy records from December 2020 indicated Plaintiff was not performing his home exercise program (HEP) as instructed, had not progressed beyond beside exercises, and was still using a cane, noting "[b]y this point should have returned back to work. Not putting forth good effort." AR 115–16.

The Court recognizes the evidence may be susceptible to more than one rational interpretation and acknowledges Plaintiff views the evidence differently. Nevertheless, the Court finds the ALJ's nondisability finding for the alleged closed period, from May 2019 to January 2021, was based on a rational interpretation of the record and therefore supported by substantial evidence. *See Shaibi v. Berryhill*, 883 F.3d 1102, 1108 (9th Cir. 2017) ("As we cannot say that the ALJ's interpretation of the available evidence was not rational, the ALJ's conclusions were supported by substantial evidence."). Thus, given the highly deferential standard of review, the Court will not disturb the ALJ's conclusion. *Woods*, 32 F.4th at 788 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.") (quoting *Burch*, 400 F.3d at 679).

/ /

/ /

/ /

/ /

/ /

/ /

## V.     CONCLUSION

Based on the foregoing analysis, the Court **AFFIRMS** the final decision of the Commissioner of Social Security. Accordingly, the Court resolves the Joint Motion for Judicial Review [ECF No. 22] in Defendant's favor and **DENIES** Plaintiff's motion to reverse the judgment and remand to the Commissioner.

The Clerk shall enter judgment accordingly and terminate the case.

**IT IS SO ORDERED**.

Dated:  March 25, 2024

HON. MICHELLE M. PETTIT
United States Magistrate Judge